# In the United States District Court
## for the
## Western District of Texas

UNITED STATES OF AMERICA     §
                                     §
v.                                         §
                                     §      SA-11-CR-973-XR
WILLIE D. FIELDS                 §

## ORDER

On this day came on to be considered Defendant's motions to suppress (docket nos. 44 and 58).

## Background

Defendant is charged in a three count indictment with possession of a firearm by a convicted felon, possession of a stolen firearm and possession with intent to distribute 28 grams of cocaine base. He argues that the affidavit did not provide probable cause to justify the issuance of a search warrant. In addition, Defendant argues that the magistrate was misled by information given by the affiant. He seeks to exclude the weapons, ammunition and drugs located in his apartment.[1] He also seeks to suppress various oral statements he gave to law enforcement officers.

San Antonio Police Detective K. Newman testified that "a week or so" prior to October 18, 2011, he spoke on two or three occasions to a confidential source ("CS") who indicated that the Defendant was selling crack cocaine from a specific apartment.[2] The CS identified a photograph of the Defendant as the person selling drugs from the apartment.[3] The CS also identified the vehicle being driven by the Defendant. After receiving this information Detective Newman conducted computer research with the

---

[1] Three firearms, various amounts of ammunition, crack cocaine and scales were found in the apartment.
[2] October 11, 2012 hearing at pp. 6, 11.
[3] Id. at p. 20.

name and address supplied by the confidential source.[4]  Det. Newman discovered that a theft report

indicated that the Defendant resided at the apartment identified by the confidential source.[5]  Det.

Newman also conducted surveillance at the apartment.[6]  He saw an individual matching the description

of the Defendant.  The Defendant was driving the vehicle identified by the CS.  The Defendant was seen

with another individual and their behavior was consistent with a possible drug transaction.[7]

Det. Newman thereafter completed an affidavit for search warrant and presented same to a city

magistrate.  The affidavit stated, in part, as follows:

> [H]e has good reason to believe and does believe that a certain place in
> San Antonio, Bexar County, Texas described as:  a multi apartment
> building known as and located at: The Lodge on Perrin Creek, 2355
> Austin Hwy #708....  In San Antonio, Bexar County, Texas, there are
> premises under the control and in the charge of Defendant listed as:
> Willie Fields B/M DOB: 06/14/88.  Said premises are a place where a
> controlled substance, to wit, Cocaine, is unlawfully possessed in
> violation of the Texas Health and Safety Code, and that such belief of
> the Affiant is founded upon the following information:  Affiant did on
> the 18th day of October, 2011 receive information from a credible and
> reliable person who has on previous occasions given Affiant information
> regarding the trafficking and possession controlled substances which
> has proven to be true and correct but whose identity cannot be
> revealed for security reasons.  The said credible and reliable person
> stated that they did within the last 48 hours see a controlled substance
> to wit Cocaine, in the possession of the aforesaid Defendant(s) Willie
> Fields inside the location at The Lodge on Perrin Creek, 2355 Austin Hwy
> #708.  Information was received from the credible and reliable
> individual that narcotics were being sold at the listed location.  Using
> Law Enforcement Data Bases I was able to establish that Willie Fields as
> the resident at the listed location.  I was able to show the credible and
> reliable individual a photograph of Willie Fields and the individual made
> a positive identification of him as the resident of the location and the
> individual selling narcotics at the listed location.[8]

---

[4] Id. at pp. 6, 8.
[5] Id. at p.8.  Govt. Ex. 4.
[6] Id. at pp. 14, 21-22
[7] Id. at. pp. 21-22.
[8] Govt. Ex. 1.

The city magistrate signed a search warrant on October 18, 2011 at 8:35 p.m. A team of law enforcement officers arrived to the subject location at 11:30 p.m. Drugs and weapons were found at the scene (guns were located under the bed and drugs were found in the kitchen).[9] Det. Newman provided Defendant his *Miranda* warnings and the Defendant acknowledged that he lived at the apartment.[10]

The permanent resident of the apartment and Defendant's girlfriend, Deirde Jackson, was located at a nearby grocery store and brought back to the apartment.[11] After the *Miranda* warnings were administered and the warrant read, she became agitated and was removed from the apartment and questioned outside. Defendant suggests that he was told by police officers that he should take the "fall" for the contraband so that his girlfriend would not be charged. Det. Newman and Det. White denied that these statements were made. Ms. Jackson testified that a police officer told her that "Willie" was not taking responsibility for the contraband and asked her to speak to him. Ms. Jackson testified that she did not know anything about contraband in the apartment, but was willing to speak to the Defendant.[12] She testified that she told the Defendant they are "trying to put it on me" and that the Defendant told her "don't worry it was going to be ok." At the apartment, Mr. Fields spoke to various law enforcement officers.[13] He was then taken from the apartment and transported to the San Antonio Police Department Headquarters, where he was further questioned by Det. White, then employed with the Bureau of Alcohol, Tobacco & Firearms. The Defendant was again read his *Miranda* rights. He admitted to possessing the weapons found at the apartment and told Det. White how he came into

---

[9] Id. at p. 25.
[10] Id. at p. 26.
[11] Id. at p. 23.
[12] Ms. Jackson's testimony is unreliable. Although she was aware of Defendant's past criminal history, she claims she had no knowledge that 35 grams of crack cocaine packaged in separate baggies were in her small kitchen apartment. Likewise, she claims she had no knowledge that 3 firearms were located underneath her bed.
[13] Deputy U.S. Marshal Austin Phillips testified that the Defendant was read his Miranda rights and thereafter Defendant admitted he had a kilo of cocaine at one time in the apartment. Deputy Marshal Phillips testified that the Defendant made his statements freely and voluntarily.

possession of the firearms.  He stated that Ms. Jackson was aware of some "things" that he did, but that she worked two regular jobs.   The Defendant also admitted to possession of the cocaine, claiming that he stole the drugs during a "lick."

## Analysis

When a search has been conducted in accordance with a warrant, this court uses a two-part test to review a motion to suppress. *United States v. Froman*, 355 F.3d 882, 888 (5th Cir. 2004). The first step involves examining whether the good faith exception to the exclusionary rule applies. *Id*. (citing *United States v. Leon*, 468 U.S. 897, 919–20 (1984)). If the good faith exception applies, no further analysis is necessary unless the case involves "a 'novel question of law' resolution of which is 'necessary to guide future action by law enforcement officers and magistrates.'"  *United States v. Payne*, 341 F.3d 393, 399 (5th Cir. 2003). If the good faith exception does not apply, then this court proceeds to the second step of the analysis and considers whether there was probable cause to support the issuance of the warrant. *Froman*, 355 F.3d at 888.

An officer is not entitled to invoke the good faith exception if the judge who issued the warrant acted after being "misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *United States v. Mays*, 466 F.3d 335, 343 (5th Cir. 2006) (internal quotation marks and citation omitted); *see also Franks v. Delaware*, 438 U.S. 154, 155–56 (1978) (providing that intentional false or reckless statements must be excised from a warrant affidavit, and evidence must be suppressed if the remaining information fails to establish probable cause; *United States v. Tomblin*, 46 F.3d 1369, 1376–77 (5th Cir. 1995) (applying *Franks* to an allegation of an omission).

Defendant initially argued that the magistrate was misled because there was no evidence to substantiate the affiant stating that Defendant resided at apartment number 708.   That argument is

without merit. Det. Newman testified that a theft report indicated that the Defendant resided at the apartment identified by the confidential source. Det. Newman was able to immediately secure a copy of the theft report from San Antonio Police Department records confirming his testimony.

An officer is also unable to invoke the good faith exception if the affidavit upon which the warrant is founded is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" and is thus a "bare bones" affidavit. *Mays*, 466 F.3d at 343. A bare bones affidavit is one that contains wholly conclusional statements about an affiant's knowledge and beliefs. *United States v. Pope*, 467 F.3d 912, 920 (5th Cir. 2006).

Defendant's argument that the affidavit was bare bones and that the reliability of the confidential informant was not established also lacks merit.[14] Similar affidavits have been found to be legally sufficient. *See U.S. v. McCray*, 354 Fed. Appx. 205 (5th Cir. 2009); *United States v. McKnight*, 953 F.2d 898, 904–05 (5th Cir. 1992) ("The Constable's assertion that the confidential informant was 'reliable' and had 'furnished him with information in the past that has proved to be reliable and true' provided the magistrate with sufficient indicia of the reliability and veracity of the informant's tip."); *United States v. Satterwhite,* 980 F.2d 317, 321 (5th Cir. 1992) (approving of an affidavit that "provided the magistrate with facts, and not mere conclusions"); *Christian v. McKaskle*, 731 F.2d 1196, 1198, 1200 (5th Cir. 1984) (finding that "a factual basis for the credibility of an informant can be supplied by an 'explicit claim of past reliability' "; and finding that an affidavit was adequate where the confidential informant asserted that he saw drugs at a location within the previous 24 hours).

---

[14] Defendant relies upon *U.S. v. Barrington*, 806 F.2d 529 (5th Cir. 1986). In Barrington, the Court noted that the affidavit merely stated only that "Captain Solomon 'received information from a confidential informant' who is 'known to Captain Phil Solomon and has provided information in the past that has led to arrest and convictions.'" In this affidavit, however, the CS noted that within the last 48 hours he saw Defendant at the apartment with cocaine and that drugs were being sold from the apartment. Similarly, Defendant's reliance upon *U.S. v. Jackson*, 818 F.2d 345 (5th Cir. 1987) is not persuasive. In that case the affidavit failed to state that the informant had previously given tips that had proved to be correct.

The good-faith exception also requires answering the question of "whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *U.S. v. Leon*, 468 U.S. 897, 922 n.23 (1984). There is no good faith if one of four circumstances exists: (1) If the issuing magistrate/judge was misled by information in an affidavit that the affiant knew was false or would have known except for reckless disregard of the truth; (2) where the issuing magistrate/judge wholly abandoned his or her judicial role; (3) where the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid.

The good faith exception to the exclusionary rule applies in this case. In the alternative, there was probable cause to support the issuance of the warrant.

Probable cause is a practical assessment that all the circumstances generate a "fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Thomas*, 627 F.3d 146, 159 (5th Cir. 2010) (quotation marks and citation omitted). In this case a credible and reliable confidential source told the affiant that Defendant could be found at apartment number 708. The CS had on previous occasions given Det. Newman information regarding the trafficking and possession of controlled substances which had proven to be true and correct. The CS told Det. Newman that within the last 48 hours he saw cocaine in the possession of Willie Fields inside apartment number 708 and that controlled substances were being sold from that location. Finally, Det. Newman noted in his affidavit that a photograph of Willie Fields was shown to the CS and that the CS made a positive identification of Defendant as the resident of the apartment and the individual selling narcotics at the apartment.

Finally, Defendant argues that he was coerced into providing a confession because law enforcement officers threatened his girlfriend with arrest.   He argues that he gave an involuntary confession because an express or implied promise was made to him that his girlfriend would not be arrested.

The Fifth Circuit in *U.S. v. Fernandes*, 285 Fed. Appx. 119 (5th Cir. 2008), has stated:

> It is true that certain direct or implied promises of leniency may be "so attractive they render a resulting confession involuntary" if the promise is not kept.  *Streetman v. Lynaugh*, 812 F.2d 950, 957 (5th Cir. 1987). In *Bram v. United States*, the Supreme Court held that, for a confession to be voluntary, it may not be "extracted by any sort of threats or violence, or obtained by *any direct or implied promises*, however slight". 168 U.S. 532, 542–43, 18 S. Ct. 183, 42 L. Ed. 568 (1897) (emphasis added).

> The Court, however, has retreated from a strict application of this position, holding that *Bram* does not state the standard for voluntariness.  *Arizona v. Fulminante*, 499 U.S. 279, 285–86, 111 S. Ct. 1246, 113 L.Ed.2d 302 (1991). Instead, voluntariness must be determined based on the totality of the circumstances. *Id*. In that regard, the existence of a promise constitutes but one factor in that determination and does *not* render a confession involuntary *per se*. *Hawkins v. Lynaugh*, 844 F.2d 1132, 1140 (5th Cir. 1988).

A confession is voluntary if, "under the totality of the circumstances, the statement is the product of the accused's free and rational choice.  To be considered voluntary, a confession cannot be the product of 'official overreaching, in the form either of direct coercion or subtle forms of psychological persuasion'.  The government carries the initial burden of showing by a preponderance of the evidence that the defendant waived [his] rights and that the statements []he made were voluntary." *U.S. v. Scurlock*, 52 F.3d 531, 536 (5th Cir. 1995).

In this case there was no express or direct promise of leniency made.  At most there may have been an implied promise made not to arrest or charge Ms. Jackson.

In this case the Government carried its burden of showing by a preponderance of the evidence that the defendant waived his rights and that the statements he made were voluntary.  The Defendant was given his *Miranda* warnings prior to making any statements.  In addition, the Defendant has had previous encounters with law enforcement officers and was previously aware of his rights.  *See U.S. v. Turner*, 674 F.3d 420 (5th Cir. 2012).  No physical coercion was applied by any law enforcement officer. The Defendant was relaxed and confessed freely, even volunteering information well beyond whether he was the owner of the drugs and weapons found in the apartment.   Assuming arguendo that law enforcement officers implied to the Defendant that they would not arrest or charge his girlfriend, under the totality of the circumstances, Defendant's statements were the product of his free and rational choice.

Alternatively, law enforcement officers had a good-faith basis to arrest Ms. Jackson.  Drugs and contraband were found inside an apartment she was residing in and responsible for, Defendant's desire to extricate Ms. Jackson does not render his confession involuntary.  *U.S. v. Aguirre-Flores*, 464 Fed. Appx. 394, 395 (5th Cir. 2012).

### Conclusion

Defendant's motions to suppress (docket nos. 44 and 58) are denied.

SIGNED this 6th day of November, 2012.

_____
XAVIER RODRIGUEZ

UNITED STATES DISTRICT JUDGE